*G. S. Orth* and *E. H. Brackett,* for the state.

--------------------

THE STATE, for the use of the Inhabitants, &c., *v.* THE STATE BANK and Others.

A deed for the use of the inhabitants of a congressional township, should, under the R. S. 1838, be made to the inhabitants, and not to the trustees of the township.

Section 96, p. 89, acts 1833, enacts that the "school-commissioner shall, on taking a mortgage, loan to the applicant any sum not exceeding half the appraised value of the land. But a greater amount than three hundred dollars shall not be on loan to any one applicant or joint concern at a time." *Held,* that a mortgage given to secure a loan of over 300 dollars was absolutely void.

Section 5, p. 32, acts 1837, which enacts that upon a sale made by a school-commissioner under a mortgage to the school fund, his deed shall vest in the purchaser all the interest of the mortgagor, furnishes no indication that the legislature intended that a failure to comply with the requirements of the act of 1833 should not avoid the mortgage.

The intention of said section 5 is, that if through accident or mistake the commissioner should receive in mortgage titles which prove to be objectionable, all the security he may obtain, in virtue of such titles, should be enforced.

A school-commissioner is not a mere agent, but an officer whose duties are prescribed by law, and any act of his in direct conflict with a statute, is a nullity.

A void act is incapable of ratification.

A person who has executed a mortgage which is void, as being contrary to a public statute, may set up its nullity against a purchaser under it.

A purchaser of land under a void mortgage brought suit to recover possession of the premises, and sought to attack the title of the defendant, by proof that the latter purchased the same upon execution at a price so inadequate as to furnish conclusive evidence of fraud. *Held,* that the plaintiff having no title, the question of the validity of the defendant's title could not arise.

*Wednesday,
November* 29.

ERROR to the *Tippecanoe* Court of Common Pleas.

DAVISON, J.—Bill in chancery by the plaintiff against the defendants. The object of the suit was to obtain the benefit of a mortgage given to the school-commissioner of *Tippecanoe* county for the use of the relators. The facts are these:

*John Sherry,* on the 24th of *December,* 1836, borrowed of one *Samuel Black,* then school-commissioner, 1,527 dollars of funds in his hands belonging to the relators. To secure the payment of the loan, *Sherry* executed a mortgage of the south-east quarter of section six, in township twenty-two, of range six west. On the 15th of *September,* 1840, *Jesse Evans,* the successor in office of *Black,* sold the mortgaged premises at public auction. They were purchased, at that sale, by *James P. Ellis,* one of the trustees of the relators, for 1,550 dollars. The purchase was made for them. Pursuant to this sale, *Evans,* as school-commissioner, executed a deed to *Ellis* and his co-trustees and their successors, for the use of the relators. This was done through mistake. The deed should have been made directly to the inhabitants of the congressional township. After the mortgage was executed, various judgments were recovered against *Sherry,* upon which executions were issued, and under which the state bank, on the 9th of *May,* 1840, and prior to the sale on the mortgage, purchased as her property the whole of section six above mentioned, and also the adjoining section four, for 8,546 dollars; but for the quarter embraced in the mortgage, she paid only 5 dollars, it being at the time worth at least 1,800 dollars. The bank, at the time of her purchase, had actual notice of the existence of the mortgage, and she is now in possession of the land in dispute. *Sherry* is insolvent, and the mortgage

remains unsatisfied, except so far as satisfied by the com-
missioner's sale.

The bill prays that the mistake in the conveyance be
corrected; that the bank be compelled to surrender up
possession of the land claimed by the relators; or if the
Court should deem the sale to the inhabitants, &c., inope-
rative, then to foreclose the mortgage, &c. General relief
is also prayed. Upon final hearing the bill was dismiss-
ed, &c.

The mortgage upon which the plaintiff relies in support
of her title to the premises, was given under an act of the
legislature approved *February* 2, 1833. Section 96 of that
act provides, that the "school-commissioner shall, on taking
a mortgage, loan to the applicant any sum not exceeding
half the appraised value of the land. But a greater amount
than three hundred dollars shall not be on loan to any one
applicant or joint concern at a time." Acts of 1833, p. 89.

The language of this enactment is clear, explicit and
imperative, and leaves no room for construction. It ex-
presses a plain legislative intention that more than three
hundred dollars shall not be on loan to any one person at a
time. Such being the manifest intent of the act, it would
seem needless to inquire into its policy. Still it may be
said that the limitation in point of amount was not made
merely for the safety of the fund; because that object was
attained by other provisions of the same statute, which
required the commissioner to loan on unincumbered real
estate, for which the borrowers could produce perfect titles.
We think the purpose of the limitation was, mainly, to
afford facilities to all who might desire to become bor-
rowers; to enable men of limited means to procure small
loans, and thus diffuse the benefits as far as possible, and
prevent the few from engrossing the entire fund.

The commissioner, in the case before us, loaned to one
applicant 1,527 dollars, to secure the payment of which the
mortgage in question was given. That loan was made
against the express letter and also the obvious policy of
the law. Was the mortgage, on that account, void? In

form, it was a contract, and "it is believed that no contract was ever held valid, the making of which was expressly or directly prohibited by law. To hold a contract binding, which is thus prohibited, would be to enforce that which the legislature has forbidden, and be, in effect, the repeal of a law by judicial construction." Chitty on Contracts 693, and authorities there cited. Also, Story on Cont. 641.

*Harris* v. *Runnels*, 12 Howard 79, is relied on as an authority modifying the rule, that a contract which is expressly prohibited by statute is void. That was an action on the indorsement of a promissory note, the consideration of which note was the sale of slaves brought into the state of *Mississippi* and sold contrary to the provisions of a statute which imposed a penalty of 100 dollars against the seller and buyer of each slave so sold. The contract was held valid. The question in that case was whether the *Mississippi* statute prohibited the contract by implication. And the Court ruled, that "where a statute is silent, and contains nothing from which the contrary can properly be inferred, a contract in contravention of it is void. But the whole statute must be examined in order to decide whether or not it does contain anything from which the contrary can be properly inferred." But it appeared from other parts of the statute then under consideration, that the legislature did not intend to declare the contract void. The force of this authority, when applied to the case before us, is not perceivable. There is nothing in the act of 1833 from which it can be "properly inferred" that the legislature intended that contracts prohibited by section 96 of that act, should not be considered void.

But we are referred to an act of 1837, which provides that upon a sale made by a school-commissioner under such mortgage, his deed shall vest in the purchaser all the interest of the mortgagor. Acts of 1837, s. 5, p. 32.

This provision, it is said, contemplates a failure of the school-commissioner to observe the rules prescribed for his governance in making a loan, and affirms the validity of

the security, notwithstanding such failure; "and, therefore, the legislature did not intend that a failure to comply with the requirements of the statute would avoid the mortgage." This construction is not strictly correct. The provision in the latter act refers to "the interest of the mortgagor" in the mortgaged premises, and nothing more. The commissioner was not authorized to take anything in mortgage save land which was unincumbered, the legal and equitable title to which was in the applicant for the loan. But the act presupposes that in discharge of that branch of his duty, the commissioner may, in some cases, be deceived, and simply intends that if, through accident or mistake, he should receive in mortgage titles which prove to be objectionable, all the security he may obtain in virtue of such titles, should be enforced. It is not difficult to see that the commissioner might furnish a reason why he had been imposed on by a defective title to the mortgaged premises; but if he should loan over 300 dollars, he could have no excuse, because the law, in express terms, prohibits it. Nor can the act of 1837 be so construed as to sanction, in any case, a loan of more than 300 dollars "to any one applicant or joint concern at a time." In none of these enactments do we perceive anything conducing to show that the legislature meant, that a mortgage given to secure a loan for any amount over the limit fixed by the act of 1833, should be enforced.

It is said that the commissioner was an agent for the several townships in his county; that in making the loan, it is true he violated his instructions; but his principals, by the purchase of the land and the institution of this suit, have ratified the act, and it is not competent for the bank to set up such violation of the statute in avoidance of the contract. It was, however, incumbent on the plaintiff to produce a valid title to the premises. The mortgage was the foundation of her title. If it was inoperative, she had no right of recovery in this suit. An individual may ratify the unauthorized act of his agent, when such act is voidable merely, not void. But a school-commissioner is not a mere agent; he is an officer whose duties are prescribed

by law. His act, in the present case, was in direct conflict with a statute, and must, therefore, be considered a nullity. But a void act is in no case susceptible of ratification. Mr. *Story*, in his treatise on Agency, says, that "contracts or acts which are illegal, or against public policy, being void, ought not to be allowed to acquire any validity from being subsequently confirmed, since the same noxious qualities adhere to the ratification as existed in the original transaction." Story on Agency, ss. 240, 241.

There is evidently a distinction between acts which are illegal because they are unauthorized by law, and those directly in conflict with a statute. This difference is plainly marked in *The State* v. *Buffalo*, 2 Hill 434, cited by the plaintiff. In that case the commissary general, by his deputy, had loaned the arms of the state and took a bond to the state for their return. The Court held that the act was unauthorized by statute, but that, nevertheless, it was competent for the state to waive the tort and sue on the bond. Judge *Nelson*, who delivered the opinion, said, " All contracts which have for their object anything repugnant to justice, or against the general policy of the common law, or contrary to the provisions of any statute, are void. *Ex turpi contractu actio non oritur*. It will be seen that the act of loaning the arms was not against any positive statute." This authority is not in point, because the mortgage under consideration was taken to secure a loan expressly forbidden by law. Still, the reasoning of the Court sustains the doctrine, that contracts in violation of statutes are void.

It is contended that *Sherry* induced the commissioner to violate his instructions; that the defence is iniquitous, and can not be regarded with favor. The answer to all that is, that the commissioner acted in defiance of an express provision of the statute. *Sherry* has set up no defence; but if he had, the objections to the mortgage now raised by the bank, would be alike available to him. In *De Groot* v. *Van Duzer*, 20 Wend. 393, the Court say, that "the question is not whether such defence is conscientious between the parties, where perhaps the defendant has been himself

more culpable than the plaintiff, who is endeavoring to enforce the contract against him; for in the language of lord *Mansfield*, it is not for the sake of the defendant that the objection is ever allowed in such cases; but it is on general principles of policy, that Courts will not lend their aid to any one who founds his claim, or cause of action, upon either an immoral or illegal act." 20 Vt. R. 189.—5 Dall. 299.

Again, it is said that the premises in dispute were worth 2,000 dollars; that the bank purchased them at public sale for 5 dollars; showing the inadequacy of price to be so great as to furnish conclusive evidence of fraud. This position involves an inquiry not pertinent to the case. If our view be correct, the relators have no valid claim on the land, because the mortgage is not operative for any purpose. The inadequacy of price is, therefore, a matter unimportant to the plaintiff. Whether *Sherry* could successfully dispute the validity of the sale to the bank or not, is a question which does not arise in the record.

We are of opinion that the mortgage is a nullity, and being so, the commissioner's sale vested in the relators no title. It follows that the plaintiff is not entitled to recover.

*Per Curiam.*—The decree is affirmed with costs.

*R. C. Gregory* and *R. Jones*, for the state.

*A. S. White* and *H. W. Chase*, for the defendants.