DEMING and Another *v.* THE STATE on the relation of MILLER.

DEMING and Another *v.* THE STATE on the relation of MILLER.

SCHOOL FUND—MORTGAGE.—Suit to foreclose a mortgage upon certain real estate given to secure a loan of school funds. At the time the loan was made there was a prior incumbrance on the lands mortgaged, of which fact the auditor had notice by the borrower's affidavit of title.

*Held,* that the mortgage was valid as against the borrower.

*Held,* also, that the object of the legislature, in forbidding loans of school funds on mortgage of land, on which there is a prior incumbrance, is to make the loan secure beyond any contingency. Page 418.

CONTRACTS PROHIBITED BY STATUTE.—The general rule is that the courts will not enforce contracts prohibited by statute, nor allow the recovery

of money paid in pursuance of them, but the parties will be left with-out remedy whenever they are in *pari delicto*. But this rule is not applicable where the contract is prohibited for the mere protection of one of the parties against an undue advantage, which the other party is supposed to possess over him. *The State* v. *The State Bank*, 5 Ind. 353, over-ruled. Page 420.

SCHOOL FUND—MORTGAGE—NOTICE.—The mortgage sued on was never acknowledged or proved, as our general laws require to admit a mortgage to record, but it was nevertheless recorded in the office of the recorder. After it was recorded, but without actual notice thereof, *A* became the *bona fide* purchaser of the land for a valuable consideration.

*Held,* that the fact that the mortgage had been actually recorded, without being acknowledged or proved, as the statute required to entitle it to be recorded, was not notice to a subsequent *bona fide* purchaser.

*Held,* also, that the act of 1843, still in force, 1 G. & H. 552, sec. 69, provides that mortgages taken for loans of the school fund shall be considered to be of record from the date thereof, and shall have priority over all mortgages and conveyances not previously recorded, and that the failure to make inquiry at the auditor's office was the fault of the purchaser. Page 422.

APPEAL from the *Tippecanoe* Circuit Court.

FRAZER, J.—This was a suit to foreclose a mortgage, bearing date *April* 23, 1853, given by *B. O. Deming,* upon certain real estate to secure a loan of school funds. At the time the loan was made there was a prior incumbrance by mortgage upon the lands, of which fact the county auditor had notice by the borrower's affidavit of title. The mortgage sued on was never acknowledged or proved, as our general laws require to admit a mortgage to record, but it was nevertheless recorded in the office of the recorder. *Hester Deming,* after the mortgage was given and recorded, but without any actual notice thereof, became the *bona fide* purchaser of the property for a valuable consideration.

Two questions arise upon this record, both of which are of no little importance to the community, when it is borne in mind that the fund loaned is devoted by law to the sacred purpose of public education, and that, in all probability, the safety of very much of it is dependent upon the conclusion at which we shall arrive.

1. Was the mortgage void as against the borrower?

By the law, in force when this mortgage was given, the auditor was only authorized to loan the fund, upon pledge of real estate, without incumbrance; and it is contended that the existence of a prior incumbrance by mortgage in this case, made known to the auditor when the loan was made, renders the transaction void. R. S., 1843, p. 244. The statute is as follows: "The auditor shall duly inform himself of the value of all real estate offered in pledge as aforesaid, and shall be the judge of the validity of the title thereof; and it is hereby made the duty of all persons applying for a loan to produce to said auditor, for his inspection, the title papers, showing a clear and valid title in fee-simple, *without incumbrance,*" etc. "Such person shall also, before he receives the money to be loaned, make oath to the truth of an abstract of his title to said land, and that there is no incumbrance or better claim, in law or equity, that he knows of, or believes, upon or to said land."

These provisions, defining the duty of the auditor, were obviously intended as safeguards for the preservation of the fund. Their whole tenor indicates a careful purpose of the legislature to make every loan secure beyond any contingency. This, too, was unquestionably the *only* object sought to be attained. Should we hold that the mortgage is void, because the auditor chose to disregard that provision of the statute which required him to make no loan upon lands incumbered, we should defeat the very object of the law, and enable the party who had obtained the loan, by taxing the good nature of the auditor, to pocket the money obtained, without being required to refund it. And this too, it may be, not at the expense of the auditor or his sureties; for, after the lapse of ten years, his official bond may furnish no indemnity whatever, and the school fund must sustain a loss which its owners, the inhabitants of the township, had no power to prevent. Their agent, the auditor, made such, in spite of them, by legislative

enactment, might thus by design squander their fund at his pleasure. Every instinct of justice revolts at the proposition, and the conscience is at once shocked by the claim of exemption made by the borrower upon such a pretext. The law happily affords no warrant for it, in our opinion.

The case of *The State* v. *The State Bank*, 5 Ind. 353, is cited in support of the appellants' position, and it may possibly sustain it. In that case, the auditor had loaned to a party $1,527, in defiance of the law which prohibited him from loaning more than $300 to one person; and this court held that the mortgage was void, upon the ground that it was prohibited by statute. We think that the learned judge, who delivered the opinion in that case, wholly misconceived the main purpose of the statute in limiting the amount to be loaned to one person. The safety of the fund was, as we conceive, the leading purpose of the limitation, and not, as was supposed, to accommodate a greater number of borrowers. Small loans, should the title to the lands mortgaged in security fail, would be more likely to be made by ordinary judgment and execution, or if lost, the loss would be less severe. The fund is one to be securely invested, that its principal may be preserved, and its interest perpetually applied to the purpose of public education. This is the plain duty of the legislature, and its whole duty, in the execution of a public trust concerning a fund belonging, not to the state, but to the people of the townships, by grant from the nation, for one special and specified object; and to suppose that this was not the first and leading object of an enactment so wisely calculated to accomplish the end, is but to assume a gross departure from the path of duty by a co-ordinate department of the state government. And this assumption, without cause, should never be indulged; and especially where, as in that case, and also in the one now in judgment, consequences are to flow therefrom which would result in loss of the fund, which it was the

plain legislative purpose to protect. The general rule of law that a contract prohibited by statute is void, is familiar, and we do not lose sight of it. It is a wholesome rule in every case where it is properly applicable. The general doctrine as to such contracts is, that the courts will not enforce them, nor aid in the recovery of money paid in pursuance of their terms, but parties who have contracted in violation of law, will be left without remedy whenever they are *in pari delicto.* The plain reason and purpose of the rule commends it to every enlightened judgment. It is to secure obedience to the statute which has forbidden the thing to be done, and thereby aid in accomplishing the legislative intention. Thus, the violation of public law is often punished, and thereby obedience to it secured.

But the rule is properly applied only where the reason upon which it is founded exists. "The law ceases with the reason thereof," and it is a grave error to regard it as a merely arbitrary rule, applicable to *all* contracts which are prohibited by statute. It is generally applicable because the thing prohibited is usually immoral, or against public policy. Gaming contracts, contracts made on the Sabbath, contracts of champerty and maintenance, and many others of like nature, might be mentioned as examples. But sometimes contracts are prohibited for the mere protection of one of the parties against an undue advantage which the other party is supposed to possess over him. In such cases the parties are not regarded as being equally guilty, and so the rule is not deemed applicable, though both have violated the law. The doctrine in such cases was forcibly stated by Lord *Mansfield*: "But where contracts or transactions are prohibited by positive statute, for the sake of protecting one set of men from another set of men, (the one, from their situation and condition, being liable to be oppressed or imposed upon by the other,) then the parties are not *in pari delicto;* and, in *furtherance* of these statutes, the person injured, after

the transaction is finished and completed, may bring his·
action, and defeat the contract." *Browning* v. *Morris,*
2 Cowper, 790. The distinction thus made has been ever
since observed by the *English* courts. *Howson* v. *Hancock,*
8 D. & E., 575; *Vandyck* v. *Hewitt,* 1 East. 96; *Smith* v.
*Bromley,* Doug. 696. As examples to illustrate the mean-
ing of the great *English* judge, whose language we have
quoted, may be mentioned cases of usury of money paid
to a creditor by a bankrupt to procure his signature to a
certificate, (the statute forbidding it,) and money paid in
violation of acts regulating lotteries. In such cases, the
money paid could be recovered back.

The same distinction seems to be recognized and fully
approved and acted upon in this country. *Inhabitants, etc.*
v. *Eaton,* 11 Mass. 368. *Wheaton* v. *Hibbard,* 20 Johns. 292.
*Schroeppel* v. *Corning,* 5 Denio, 240 ; 2 Pars. on Con. 405.  ·

The case at bar must be deemed to belong to that class
where the parties should not be deemed equally guilty.
The auditor, who is charged by law with the duty of loan-
ing the fund, can not, in any just·sense, be regarded as a
party; he did not own the money; it belonged to others,
who were powerless to control him, and who had no
agency whatever, in the transaction which the statute for-
bade; and though the loss of the money loaned, would
incidentally subject the officer to liability upon his bond,
yet it must primarily fall upon those who are entirely inno-
cent. We know of no case, save the one in 5 Ind., already
alluded to, which gives any warrant for such a decision,
and the able counsel for the appellant has not cited any
other.

We are aware that in former times there was some con-
fusion in the cases upon· the subject, and that the modern
decisions may not be in harmony. But the principles
which solve questions of this character are sufficiently ap-
parent to make the path of duty plain. And, in the case
in hand, surely there can be no room for controversy as to
the object of the enactment requiring the loan to be made

only upon unincumbered real estate. It was, as already stated, to make the fund secure. The proposition that we shall give such effect to that statute as shall defeat its sole object, is almost too preposterous for serious discussion.

The remaining question is, whether the subsequent *bona fide* purchaser, without actual notice of the mortgage, is, under the circumstances, to be charged with constructive notice of its existence.

We suppose there can be no question, that the fact that the mortgage was actually recorded, without being acknowledged or proved, as the statute required to entitle it to be recorded, is not notice; but we had a statute, when the mortgage was given, and which has ever since been in force, which is as follows: "The mortgages, taken for loans as aforesaid, shall be considered as of record from the date thereof, and shall have priority of all mortgages or conveyances not previously recorded," etc. Another section made it the duty of the auditor "to have such mortgages recorded with due diligence." R. S. 1843, p. 245. These two sections are not in conflict. The first is positive that the mortgage shall be deemed recorded from its date, and shall have priority over *all* mortgages and conveyances not previously recorded. We can not disregard so plain an enactment. The subsequent section requires it to be recorded, not to secure priority over subsequent mortgages, or conveyances, for that was already given, but as an additional means of notice to the public. The auditor's office is a public office, quite as accessible as that of the recorder, and its records would always disclose to the inquirer the existence of the mortgage quite as readily as those of the recorder. A failure to make the inquiry was the fault of the purchaser, and we can not relieve her of the consequences of it.

Judgment affirmed, with one per cent. damages and costs.

*Gregory*, J., having been of counsel, did not sit in the case.

*R. C. Gregory* and *E. A. Greenlee*, for appellants.