————o————

PIZARRO W. HOWELL, Defendant in Error, *vs.* ELIAS C. STEWART, Plaintiff in Error

1. *Practice, civil—Pleadings—Notes—Illegality of contract—Misdemeanor—Statute, construction of.*—In a suit on a note an answer, alleging that the money was advanced for an illegal purpose, is bad, if it does not allege that the money was so used; furthermore, when the act is made by statute (Acts of Feb. 26th 1869, and Feb. 2nd 1872,) a misdemeanor, the intent to do the act is wholly immaterial.

2. *Contracts—Sales—Illegal intent—Knowledge of—Recovery.*—Apart from felonies or crimes involving great moral turpitude, the mere knowledge of the lender or vendor, that the money loaned, or property sold, is designed to be applied to an unlawful purpose, will not prevent a legal recovery based on such loan or sale.

3. *Statute, construction of—Offenses—Parties designated as offenders—Liability of others.*—When a statute, defining an offense, designates one class of persons as subject to its penalties, all other persons are to be deemed as exonerated.

4. *Practice, civil—Pleadings—Answer—Demurrer—Motion to strike out.*—When the answer to a suit contains no defense, the plaintiff may demur to it or move to strike it out.

5. *Practice, civil—Pleadings-Amendments-Meritorious defense—Supreme Court.*—The Supreme Court will not interfere with the discretion of lower courts in refusing to allow time to amend an answer, unless the record discloses a meritorious defense, which the court by its action precluded the defendant from availing himself of.

*Error to St. Charles Circuit Court.*

*Glover & Shepley*, for Plaintiff in Error.

I. If the contract grows immediately out of, or is connected with, an illegal or immoral act, a court of justice will not enforce it (2 Kent Com., 466; Buck vs. Albee, 26 Ver., 184). If the illegal use to be made of the goods or money enters into the contract, and forms the motive or inducement in the mind of the vendor ( or lender ) to the sale or loan, then he cannot recover, provided the goods or money are so used. (Kneiss vs. Seligman, 8 Barb., 439; McKinnell vs. Robinson, 3 Mee. & W., 434.)

II. That, for which a demurrer will lie, cannot be reached by a motion to strike out.

*W. A. Alexander*, for Defendant in Error.

I. The mere fact of knowledge on the part of Howell, that Stewart was about to bring the cattle into the county contrary to law, does not invalidate the note.

II. The answer does not say what was done with the money. (Michael vs. Bacon, 49 Mo., 474.)

III. As to amending the answer, there is no statement under oath or otherwise of any good defense.

SHERWOOD, Judge, delivered the opinion of the court.

The plaintiff brought suit against the defendant in the St. Charles Circuit Court on a promissory note, dated July 8th, 1,872, for the sum of one thousand dollars.

The answer of the defendant is as follows: "Defendant for his answer says, that he is surety only on the note sued on, that the principal debtor therein is John E. Stewart, that said debt was contracted for money loaned said Jno. E. to assist him in bringing in said county of St. Charles Texas cattle, contrary to the statute law of this State, and at a time when their importation was not allowed, to-wit: between the first days of March and the first days of December; that the said plaintiff loaned said Jno. E. said amount of money with the knowledge that

said Jno. E. was engaged in bringing said cattle into said county, and that at the time said loan was made the said Jno. E. had in the city of St. Louis two hundred head, more or less, of said cattle, which were held by the carriers for freight and charges, and that the same could not be moved until said charges were paid; that said Jno. E. desired to bring said cattle into said St. Charles County, and applied to plaintiff for aid in order that he could pay said charges and procure the necessary help in order to drive said cattle into said St. Charles County; that said plaintiff, with full knowledge and in order to assist said Jno. E. in paying said charges, help, etc., loaned said amount of money to said Jno. E., that the importing and bringing said cattle in said county at said time was illegal and contrary to the act of the General Assembly of said State, approved Feb. 26th, 1869, that said plaintiff loaned said money to said Jno. E., with the full knowledge that he was engaged in bringing said cattle in said county, and for the express purpose and design on his part to aid and abet the said Jno. E. in his designs in and about the importation of said cattle at said time, wherefore, this defendant says that said plaintiff ought not to have or maintain his aforesaid action, etc." On the ground that this answer did "not state facts sufficient to constitute a defense to plaintiff's claim," it was stricken out on motion of plaintiff, and the court thereupon entered interlocutory and final judgment against the defendant, who duly saved his exceptions both to the sustaining of the motion and the rendition of judgment. These proceedings were had on the 8th day of Sept. 1873; *three* days afterwards the defendant filed his motion to set aside the judgment and for leave to file an amended answer, on the grounds, that no opportunity was afforded defendant to amend his answer, as the court rendered judgment immediately on the determination of plaintiff's motion; that defendant was entitled to his day in court, that the cause was not set for trial until the 15th of the month, that defendant, having filed his original answer within the time prescribed by law, was not in default, that defendant according to the rules of the court was entitled to a reasonable time in which,

to amend his answer, and no such opportunity was given, that his defense was meritorious, and the amendment only asked in furtherance of justice.

This motion being overruled, defendant excepted, and filed his motion to set aside the first judgment as well as to set aside the judgment overruling his motion. This motion being also overruled, he again excepted, and brings the case here on writ of error.

The points involved in this record, and to which our attention has been called by counsel, are three, namely:

First—Did the matter contained in the answer constitute a defense to the action?

Second—If the answer did not set forth a defense, could the defect be reached by motion to strike out, or could this result have been accomplished by demurrer alone?

Third—Conceding that the answer was no bar to plaintiff's action, did the court err in rendering judgment without affording the defendant an opportunity for amendment?

These questions will be considered in their order. As to the first: No review *in extenso* of the numerous and, in many respects, conflicting authorities on the topic of the avoidance of contracts in consequence of illegality will be here attempted, but our attention will be directed in that channel of thought, and to that mode of reasoning, which we deem applicable to the point in hand and regard as sustained by well considered cases.

We look upon this answer as essentially bad in *two* particulars: First, it does not aver that the money loaned was ever in fact *used* in consummation of the alleged illegal purpose. Second, even if it had contained such allegation, it would still have been bad, because of the *terms of the statute* on which reliance must have rested to sustain the charge of illegality.

The act of February 2nd, 1872, is substantially like that of February 26th, 1869, in its prohibition of the introduction into any county in this State, at a certain season of the year, of Texas, Mexican or Indian cattle.

The penalty for the infraction of this statute is, so far as con-

cerns the person of the offender, a fine, or both a fine and imprisonment in the county jail. The offense then is but a statutory *misdemeanor*, and in that class of offenses the *intent* is wholly immaterial, as the law in such cases predicates guilt alone on the *act done* irrespective of the motives which prompted its commission. For with mere *guilty intention*, unconnected with overt act or outward manifestation, the law has no concern.

According to the defendant's own showing *no act was done*, and consequently, the law which he seeks to use as a shield not having been violated, it follows as an inevitable sequence, that there was no *illegality* in the transaction to which his answer refers.

There is no room therefore in this case for the application of those maxims ordinarily applicable where guilty purpose is merged and swallowed up by criminal execution.

*Aside from felonies or crimes involving great moral turpitude*, the mere knowledge of the lender or vendor, that the money loaned, or property sold, is designed to be applied to an unlawful purpose, will not prevent a legal recovery based on such loan or sale. This was so held in Michael vs. Bacon, 49 Mo., 474. And that case goes far toward being decisive of this; for cases of that character are not legally distinguishable from this, on the point now under discussion, as in either case there must be something done, beyond a simple sale or loan, in furtherance of some intended illegal act which is actually *consummated*, before he who loans, or he who sells, can become in legal contemplation a participator, upon whom the gates of justice will be shut.

Thus in Holman vs. Johnson, Cowp., 341, the leading case, in England on the subject, the plaintiff, a resident of Dunkirk, sold a quantity of tea to the defendant, and delivered it there to the defendant's order, to be paid for in ready money at the place of delivery, or by bill drawn on the plaintiff in England.

The seller *knew* that the defendant intended to smuggle the tea into England, but had no concern in the transaction itself, and Lord Mansfield held the plaintiff entitled to recov-

er, remarking however, that if the plaintiff beside the bare sale and delivery at Dunkirk, had assisted in running the tea into England in contravention of the revenue laws of that country, the result would have been otherwise.

This case was followed in Biggs vs. Lawrence, 3 T. R., 454; Clugas vs. Penaluña, 4 *Id.*, 466; Waymell vs. Reed, 5 *Id.*, 599. But these cases differed from the one just cited, in this, that the plaintiffs respectively in the three cases mentioned in Term Reports, in addition to a sale, had made themselves *participants* in the affair, by so packing the goods that they were readily smuggled into England, and those cases, while expressly upholding and cordially approving that of Holman vs. Johnson, *supra,* pointed out the difference I have stated as the reason why the plaintiffs in those actions were denied a recovery.

So also in Cannan vs. Bryce, 3 Barn. & Ald., 179, it was held, that money loaned for the accomplishment of an illegal purpose, and applied to such purpose, could not be recovered.

It will thus be readily perceived, that (*with the before mentioned exceptions*) mere knowledge and mere intent stand upon one and the same footing, and an examination of the adjudicated cases, both in England and in this country, shows, that the great current of authority flows in the above indicated direction, and that so long as a design to commit a misdemeanor remains *in fieri*, unclothed with any of the attributes of legal tangibility, it will constitute no basis of defense to an action.

Any other doctrine than this would make courts but the registers of the designs of the unscrupulous, the law itself a by-word and a reproach, and totally pervert its noblest and most beneficent maxims. (Tracy vs. Talmage, 14 N. Y., 162, and cases cited; De Groot vs. Van Duzer, 17 Wend., 170; Kniess vs. Seligman, 8 Barb., 439; Mount vs. Waite, 7 Johns., 433; 2 Com. on Cont., 109, and cases cited; White vs. Franklin Bank, 22 Pick., 181.)

Briefly then, the true rule in the great majority of cases is this; that many contracts which if *executed* would bear the

taint and consequent disabilities of illegality, are not obnox-·ious to such objections while remaining *executory*.

Now with regard to the point, that the answer would still have been bad, even had it averred the *actual* application of the money to the alleged illegal purpose, because of the *manner* in which the statute is *drawn*.

It will be observed, that the penalties therein enumerated are directed, *not* towards those who *loan* money for the "express purpose" of bringing Texas, Mexican or Indian [cattle] into any given county in this State, but solely against him, and him alone, who drives, or otherwise conveys, or has under his *control*, any such cattle contrary to the provisions of the first section of the statute. This language thus designates the *person* on whom the penalty is to fall.

As Lord Mansfield, in Browning vs. Morris, Cowp., 790; when remarking on 14 Geo., III, Chap. 76, which prohibited the insurance of lottery tickets by lottery office keepers, tersely says: "The statute itself * * * has *marked the criminal*. For the penalties are all on one side; upon the *office keeper*." And the same learned judge cites with approval the decision made by Blackstone, J., in Jaques vs. Golightly, 2 W. Bl., 1073, wherein he made the distinction between that statute and the stock jobbing act of 7 Geo. II, Ch. 8, whereby *all participants* were deemed equally criminal, and held that those, whose tickets had been insured, might recover the premiums so paid from the office keepers, as the legislative inhibition fell *only* upon *them*. And the parallel here instituted, between 14 Geo., III, Ch., 76, and the act in question, is not at all affected by the reflection, that but *one* class of persons is mentioned in the act under consideration, and *two* classes in that which prohibited the insurance of lottery tickets by the office keepers. For if a criminal prominence be given to one of two mentioned classes of persons by statute, and the statute which defines the offense, by its designation of the one class as subject to its penalties, is thereby to be deemed as exonerating from punishment the *other*, most assuredly this result would follow as to *all persons not* mentioned, where the

statute, as in the present instance, makes mention of *but one* class of offenders.

It is very clear to my mind, therefore, that, even if the alleged unlawful contract had *found consummation*, it would not have precluded plaintiff of his action. Besides this statute is highly penal, and this affords another and very cogent reason for its strict construction.

Assuming then, as a sequence of the foregoing, that the answer contained no defense to the action, was the motion to strike it out the proper course to pursue, or should resort have been had to a demurrer? Even had this question not been already answered by our statute, it would not be an open one, as it has been decided that a proceeding in such case by motion is as free from objection as that by demurrer. (Sappington vs. Jeffries, 15 Mo., 628; Cashman vs. Anderson, 26 Mo., 67; Robinson vs. Lawson, 26 Mo., 69.)

It only remains to consider the last question propounded in the outset. Did the court err in refusing the defendant an opportunity for amendment?

The case of Cashman vs. Anderson, just cited, is decisive also of this point. It does not appear from the bill of exceptions, in *what* the proposed amendment consisted. For aught disclosed by the record to the contrary, it may have been equally valueless as a defense, as the matter set forth in the answer stricken out.

In Cashman vs. Anderson, *supra*, the motion was heard on the very day it was filed, and the defendant asked leave to amend his answer, without stating in *what particulars* he desired to amend, but the court refused leave, and the cause being submitted to the court, judgment was rendered for the plaintiff. In that case, immediately upon the motion being sustained, the defendant asked leave to amend, that being denied and judgment rendered against him, he straightway filed his motion to set aside that judgment. Here the defendant contented himself with merely excepting, and did not even ask leave to amend at the time the motion prevailed, nor did he file his motion to set aside the judgment rendered until

*three* days after its rendition, nor did he indicate in that motion of what his "*just defense*" consisted.

As is well said in the case last referred to, in which the judgment of the lower court was affirmed, "to say that the right for time to prepare an amended answer is *absolute* will often, especially in courts that are in session but a few days, give the defendant with a bad answer an advantage he could not have with a *good* one."

If this record disclosed a *meritorivus defense*, which the court by its action precluded the defendant from availing himself of, no hesitation would be felt in rebuking such action, as an undoubted abuse of that discretion, which the law, in furtherance of justice and not for purposes of caprice, petty tyranny or oppression, has lodged with the trial courts.

But in the *entire absence* of any such disclosure, the presumption, which favors the acts of the court below, must prevail. (Cooney vs. Murdock, *ante* p. 349.)

The judgment is affirmed.   Judge Adams absent.   The other judges concur.