THE WALTER A. WOOD MOWING, ETC., MACHINE CO. *v.*
CALDWELL.

**PATENT.**—*Foreign Corporations and their Agents.—Sale of Article Patented.*—
It is not necessary that the agents of a foreign corporation, which, by the
authority of the patentee, manufactures for sale an article covered by
letters-patent, should comply with the provisions of "an act respecting
foreign corporations and their agents in this state," (1 R. S. 1876, p. 373,)
in order to enforce contracts made by such agents in the sale of such
article.

FOREIGN CORPORATIONS AND THEIR AGENTS.—*Statute Construed.*—*Sale of Article not Patented.*—*Enforcement of.*—Where the agent of a foreign corporation, which manufactures for sale an article not covered by letters-patent, makes a contract for the sale of such article in this state without having first complied with the requirements of sections one and two of "an act respecting foreign corporations and their agents in this state," (1 R. S. 1876, p. 373,) section four of such act does not make such contract void, but prohibits the enforcement thereof *only* until the requirements of said sections one and two have been complied with.

SAME.—Such statute was enacted only for the protection of citizens of this state, who might have rights of action against foreign corporations, by compelling the latter to authorize their agents in this state to be served with summons on behalf of their principals, where such actions are commenced in this state.

SAME.—*Abatement.*—In an action by a foreign corporation to enforce a contract of sale of an article not covered by letters-patent, made by an agent of such corporation, in this state, a paragraph of answer, alleging that such contract of sale was entered into by the defendant with such agent, who had never complied with the requirements of "an act respecting foreign corporations," etc., (1 R. S. 1876, p. 373,) operates as matter in abatement of the action as one prematurely brought, and, if true, such action must abate until such statute is complied with.

SAME.—*Pleading.*—*Demurrer.*—In a suit by a foreign corporation to enforce a contract made by its agent for the sale of an article not covered by letters-patent, if it appear from the complaint that such agent has never complied with the requirements of the statute of this state respecting foreign corporations and their agents, (1 R. S. 1876, p. 373,) such complaint may be attacked by demurrer, on account of such failure.

From the Newton Circuit Court.

*S. P. Thompson* and *T. Thompson*, for appellant.

PERKINS, J.—Suit by the Walter A. Wood Mowing and Reaping Machine Company against Samuel A. Caldwell, on a complaint in two paragraphs; the first on a note for the price of a mowing and reaping machine; the second on an account for the price of the same machine.

Answer in two paragraphs:

1. General denial.

2. That the plaintiff was a foreign corporation, and that the machine was sold by its agent before he had complied with the requirements of the statute in regard to foreign corporations.

After demurrer overruled to the second paragraph, and exception taken, the plaintiff replied;

1. In denial.

2. That the machine sold was one of Wood's patent, and was sold by the agent of the company which manufactured it for and by authority of the patentee.

A demurrer was sustained to this reply, and exception to the ruling noted.

The cause was tried on the issue formed, resulting in a verdict for the defendant and, after a motion for a new trial was overruled, a judgment on the verdict.

The record in the cause presents two questions to this court, the decision of both of which is necessary to its final determination.

The questions are:

First. Is it necessary that the agent of the manufacturer by authority of the patentee, of a patented article, should comply with the requirements of our act respecting foreign corporations, before he can sell such article in this state?

Second. Does the failure of an agent of such corporation, for the sale of articles not patented, to comply with the requirements of said act, render his contracts in the name and on the behalf of the corporation void?

The first question has already been answered in the negative, by this court, in the case of *The Grover & Baker Sewing Machine Company* v. *Butler*, 53 Ind. 454, at this term. We proceed to the second question.

In 1865, a statute was enacted, regulating foreign insurance corporations, approved December 21st 1865, 1 R. S. 1876, p. 594, which has been held to be a substitute, so far as such companies are concerned, for the act of June 17th, 1852, regulating foreign corporations. See *Hoffman* v. *Banks*, 41 Ind. 1.

This statute of 1865, in section 1, declares, "that it shall not be lawful for any agent or agents of any insurance company incorporated by any other state than the

state of Indiana, directly or indirectly, to take risks or transact any other business of insurance in this state, without first producing a certificate of authority from the auditor of state;" and further, that "no insurance company, or agent, or agents of any insurance company, incorporated by any other state, shall transact any business of insurance in this state, unless such company is possessed of at least one hundred thousand dollars of actual capital, invested in the stocks, or bonds," etc.; and further, that before the agent shall receive the necessary certificate of authority to transact business from the auditor, he must produce proof to that officer, of such investment, and of the existence of other facts required by the statute, as conditions precedent, to exist before, etc.

The seventh section is as follows:

"Any person or persons violating the provisions of this act, shall, upon conviction thereof, in any court of competent jurisdiction, be fined, in any sum not exceeding one thousand dollars, or imprisonment in the county jail not more than thirty days, or both, at the discretion of the court. Violations of the provisions of this act may be prosecuted by information filed by the prosecuting attorney of the proper county, or by indictment of the grand jury."

The statute contains no section or clause thereof, declaring what the effect of a non-compliance with its provisions shall be upon contracts made before compliance. Contracts in violation of this statute are held void. *Hoffman* v. *Banks*, 41 Ind. 1; *The Union Central Life Ins. Co.* v. *Thomas*, 46 Ind 44; *The Farmers, etc., Ins. Co.* v. *Harrah*, 47 Ind. 236.

We turn now to the act of 1852, 1 R. S. 1876, p. 373, regulating foreign corporations.

The first, second and third sections of the act are as follows:

The Walter A. Wood Mowing, Etc., Co. *v.* Caldwell.

"SECTION 1. *Be it enacted by the General Assembly of the State of Indiana,* That agents of corporations, not incorporated or organized in this state, before entering upon the duties of their agency in this state, shall deposit in the clerk's office of the county *where they propose doing business* therefor, the power of attorney, commission, appointment, or other authority under or by virtue of which they act as agents.

"SEC. 2. Said agents shall procure from such corporations, and file with the clerk of the circuit court of the county *where they propose doing business,* before commencing the duties thereof, a duly authenticated order, resolution, or other sufficient authority of the board of directors or managers of such corporations, authorizing citizens or residents of this state, having a claim or demand against such corporation arising out of any transaction. in this state with such agents, to sue for and maintain an action in respect to the same in any court of this state, of competent jurisdiction, and further authorizing service of process in such action on such agent to be valid service on such corporation, and that such service shall authorize judgment and all other proceedings against such corporation.

"SEC. 3. The service of the process on such agents in actions commenced against such corporation, shall be deemed a service on the corporation, and shall authorize the same proceedings as in other cases."

The fifth section provides what acts shall be deemed acts of agency for a foreign corporation, subjecting the person doing them to the provisions of the act.

The sixth, seventh and fourth sections are as follows:

"SEC. 6. The foregoing section shall not apply to persons acting as agents for foreign corporations for a special or temporary purpose, or for purposes not within the ordinary business of such corporations, nor shall it apply to attorneys at law as such.

"SEC. 7. Any person acting as agent of foreign corporations as aforesaid, neglecting or refusing to comply

The Walter A.. Woed Mowing, Etc., Co. *v.* Caldwell.

with the foregoing provisions as to agents, shall, upon presentment or indictment, be fined in any sum not less than fifty dollars.

"SEC. 4. Such foreign corporations shall not enforce in any courts of this state, any contracts made by their agents or persons assuming to act as their agents, before a compliance by such agents, or persons acting as such, with the provisions of sections one and two of this act."

By a comparison of these statutes, it will be seen that the insurance act declares, expressly, that it shall not be lawful for any agent of a foreign insurance company to transact any business, etc., till he has procured a certificate of authority to do so from the auditor of state : declares that no insurance company or agent or agents shall transact any business, etc., unless, etc.: declares that any person or persons (not any agent, or agents,) violating the provisions of this act, shall be fined, etc.; and contains, as has been said, no section or clause declaring the effect upon contracts of a violation of its provisions.

On the other hand, the act regulating foreign corporations requires no certificate of authority to do business, from the auditor, to make it lawful for the agent to do business. It only requires that he shall deposit in the county clerk's office, his appointment as agent of the company, and an instrument from the company authorizing it to be sued and brought into court by service of process on the agent, in certain cases; and declares that any agent neglecting to comply with the provisions of the act, *as to agents*, shall be fined, etc.; and that the company shall not sue on contracts made by their agents till the provisions of the statute are complied with by such agents.

The provisions of the act bearing upon the question to be decided in this case are all, in form, directory or mandatory to the agents alone, and penal to them alone.

In the foreign insurance act there are positive declarations of illegality of acts, positive prohibitions to the

corporation, and penalties upon any person or persons violating the provisions of this act, not simply upon agents neglecting to comply with the provisions as to agents; and it leaves the effect of such violations upon contracts to be determined by interpretation and construction of the statute by the courts, according to the rules of the common law.

At common law, the general rule is, that, if a statute forbids an act to be done or provides a penalty for doing it, any contract to do such act is invalid, whether the statue declares it to be so or not. *The State* v. *The State Bank*, 5 Ind. 353; *The Rising Sun Insurance Co.* v. *Slaughter*, 20 Ind. 520.

But, says FRAZER, J., in *Deming* v. *The State, ex rel. etc.*, 23 Ind. 416, "the rule is properly applied only where the reason upon which it is founded exists. 'The law ceases with the reason thereof,' and it is a grave error to regard it as a merely arbitrary rule, applicable to *all* contracts which are prohibited by statute. It is generally applicable because the thing prohibited is usually immoral, or against public policy;" and the court held the contract in the case before it not void because made in violation of a statute, and expressly overruled the case of *The State* v. *The State Bank, supra*, because the general rule, that a contract prohibited by statute was void, was not properly applied in that case. The doctrine laid down by the court in *Deming* v. *The State, ex rel., etc., supra*, substantially overruled, also, *The Rising Sun Ins. Co.* v. *Slaughter, supra:* and, afterwards, in *New England Fire, etc., Ins. Co.* v. *Robinson*, 25 Ind. 536, GREGORY, J., in delivering the opinion, says, "It is urged in argument that the complaint is bad for not showing a compliance by the local agent of the company with the requirements of the 'act respecting foreign corporations and their agents in this state.' 1 G. & H. 272." (1 R. S. 1876, p. 373.) "It is contended that under this law all contracts of foreign corporations are void, and that the exception to the rule is where they comply with its pro-

visions, * * *. We do not so regard that statute."
The opinion then speaks approvingly of the principle
asserted, touching contracts prohibited by statute, in
*Deming* v. *The State, ex rel.*, etc., *supra*, and proceeds, "it
would seem to follow that the contract of a foreign cor-
poration, made in violation of a statute designed for the
protection of our citizens, would not, as to the latter, be
void. Moreover, this view is strengthened by the fact
that the act itself provides what shall be the effect of such
violation on the contract."

We may properly observe, here, that the case of *The
Rising Sun, etc., Co.* v. *Slaughter, supra*, is disapproved in
the *Eureka Ins. Co.* v. *Parks*, 1 Cincinnati Superior Court
Rep. 574.

Early in this opinion, we pointed out some of ·the
differences between the acts concerning foreign corpora-
tions and foreign insurance companies in force in this
state, to show that decisions on contracts arising under
the latter would not be authorities in cases arising upon
contracts under the former. The state of Wisconsin has
a statute apparently like our foreign insurance act, and
Missouri a statute apparently like our foreign corporation
act. In *Columbus Ins. Co.* v. *Walsh*, 18 Mo. 229, and in
*Clark* v. *Middleton*, 19 Mo. 53, the supreme court of that
state. decided that a failure to comply with the require-
ments of the statute did not make the contracts of the
company void.

The case of *Ætna Insurance Company* v. *Harvey*, 11
Wis. 394, came before the supreme court of that state,
arising upon a statute, as we have said, like our foreign
insurance act, and counsel cited the court to the cases in
Missouri, decided upon a statute much like our foreign
corporation act. The supreme court of Wisconsin said:

"We were referred to the cases of *Columbus Insurance
Co.* v. *Walsh*, 18 Mo. 229, and *Clark* v. *Middleton*, 19 Id.
53, in which the supreme court of that state held that
the neglect of the agent of foreign insurance companies

to take out a license as required by their law, did not invalidate contracts of insurance made by him. It will be observed on examining their statute, that it contains no express prohibition against the transaction of business without such license. It requires the agent to obtain a license and pay a tax, and imposes a penalty for failure to do so, or for transacting business without such license. The court says the act imposes a penalty on the agent, but does not make the contract void."

While the general rule is, that a contract prohibited by statute is void, we have seen that there are many exceptions; and the question is, how shall a court determine whether a case is within or without the general rule? In *Harris* v. *Runnels*, 12 How. U. S. 79, Mr. Justice Wayne, in delivering the opinion of the court, said:

" It is true that a statute, containing a prohibition and a penalty, makes the act which it punishes *unlawful*, and the same may be implied from a penalty without a prohibition; but it does not follow that the unlawfulness of the act was meant by the legislature to avoid a contract made in contravention of it. When the statute is silent, and contains nothing from which the contrary can be properly inferred, a contract in contravention of it is void. * * * That legislators do not think the rule one of universal obligation, or that, upon grounds of public policy it should always be applied, is very certain. For, in some statutes, it is said in terms that such contracts are void; in others, that they are not so. In one statute, there is no prohibition expressed, and only a penalty; in another, there is prohibition and penalty, in some of which, contracts in violation of them are void or not, according to the subject-matter and object of the statute; and there are other statutes in which there are penalties and prohibitions, in which contracts made in contravention of them will not be void, unless one of the parties to them practises a fraud upon the ignorance of the other. It must be obvious, from such diversities of legislation,

that statutes forbidding or enjoining things to be done, with penalties accordingly, should always be fully examined, before courts should refuse to give aid to enforce contracts which are said to be in contravention of them." See, also, *Smith v. Mawhood*, 14 M. & W. 452.

From these cases, it appears that what the legislature meant in the enactment of the statute, the intention of the legislature, as inferred from an examination of the entire act, is to be the guide to the court in determining whether the particular case should form an exception to the general rule. That intention may be declared in the act, or it may be inferred from all its provisions, in connection with the subject-matter and circumstances. *Pangborn* v. *Westlake*, 36 Iowa, 546, and *Howell* v. *Stewart*, 54 Mo. 400, are strong cases to this point. See, also, the *Farmers' Bank, etc.*, v. *Hale*, 59 N. Y. 53.

Before speaking further on the point of intention, it will be proper to ascertain the meaning of section four of the foreign corporation act. It is copied above. It is urged that a correct interpretation is, that a foreign corporation may not enforce, at any time, either before or after compliance with sections one and two, a contract made before a compliance with the act, in the courts of this state; but we think this interpretation inconsistent with the purpose of the act, is somewhat unreasonable, not in harmony with the general spirit of the act, is against its better grammatical construction, and not supported by its legislative history. While this interpretation concedes the validity of the contract, it renders it practically void, by prohibiting its enforcement. We can see no good reason, the contract being admitted to be valid, why its enforcement should be delayed longer than non-compliance with the requirements of the statute continues.

The legislative history of the act shows that the general assembly desired to make prominent two ideas:

First. That the act was not designed to inaugurate the

policy of hostility to foreign corporations, and to forbid their contracting within the state; that it was not its purpose to deprive the state of the benefit of the capital and business enterprise that might be introduced through their instrumentality.

Second. That the act was only intended to apply to such corporations as established permanent agencies in the state for the purpose of doing that character of business that would make them the debtors of our citizens, and render it necessary for the accomplishment of justice that the indebtedness should be enforced by personal judgments within the state.

These propositions are important in this case, as they aid in ascertaining the purpose of the legislature in enacting the statute. That it was not intended as a prohibition upon foreign corporations to contract in the state, but was merely intended to furnish the means by which our citizens could procure personal judgments against the foreign corporations who were their debtors.

But two amendments were made to the act, which was House bill No. 247, during its passage through the legislature, and they were made on the 11th day of June, 1852, upon the motion of Mr. King, who introduced it.

The original fourth section was stricken out and the fourth section as it appears in the act substituted, and the words, " a special or temporary purpose, or for," were inserted in the sixth section.

This legislative action appears in the House journal of 1852, on page 2,125.

If it had been the purpose of the legislature to render a contract invalid, where it was made by the agent of a foreign corporation before he complied with sections one and two, it would have so declared in section four when it undertook to provide what effect such non-compliance should have upon the corporation. It did not see fit to leave the judiciary to determine how the corporation would be affected by sections one, two, three, five, six

and seven of the act, where the agent had not complied with sections one and two at the time he made a contract, but it declared that effect in section four. The legislature must be supposed to have intended just what it said and no more; and that is, that a foreign corporation should not enforce such a contract in the courts of the state until it was placed in a position, by a compliance with the act, where personal service could be had upon it within the state, and personal judgments taken against it.

In connection with the foregoing, as matter indicating legislative design in passing the act of June 17th, 1852, we refer to the fact that Judge Hester, who was a prominent member of the legislature of 1852, and who, by its direction, prepared for and superintended the publication of the Revised Statutes of 1852, has the following marginal note opposite section four:

"Not to enforce contracts till they comply with sections one and two." 1 R. S. 1852, p. 243.

We think the meaning of the section is, that suits on contracts, entered into before compliance by the agents with the requirements of the statute, shall be delayed till compliance has taken place.

Such being the meaning of the fourth section, the intention of the legislature in the enactment is manifest, and the construction of the whole act is easy. It does not render contracts, such as that on which this action is brought, void; but if suit be instituted on any such contract, and an answer be filed of non-compliance with the statute, such answer will show that the suit is prematurely brought; and if well pleaded and true, will operate to abate the suit. "That *the right of action had not accrued*, at the commencement of the suit, may be pleaded in abatement; as, when an action on contract is commenced, *before* the time appointed for performance." Gould on Pleading, 269.

Should the fact that the suit is prematurely brought

appear in the complaint, it could, of course, be taken advantage of by demurrer.

Reversed, with costs, and remanded for a new trial and further proceedings in accordance with this opinion.