Filed May 24, 1893.

---

No. 892.

DAVEE ET AL. *v.* THE STATE, EX REL. THE BOARD OF COMMISSIONERS OF MORGAN COUNTY.

BILL OF EXCEPTIONS.—*When Properly in Record.—Filing.*—A bill of exceptions is properly in the record when duly certified to by the clerk, approved and signed by the judge, and sealed by the seal of the court, having been presented within the time allotted by the court, the file-mark having been properly indorsed thereon, it not being necessary that the fact of filing should appear as an order-book entry.

SAME.—*Statement that Bill Contains all the Evidence.*—Where a bill of exceptions closes with the statement, "And this was all the evidence in the case," such expression is equivalent to the phrase, "And this is all the evidence given in the case," and is sufficient.

Davee *et al. v.* The State, *ex rel.* The Board of Comm'rs of Morgan Co.

SCHOOL FUND.—*Loan of.—Mortgage.— County Auditor.—Powers and Duties.—Fiduciary Character.—Notice of.*—Where an· auditor makes a loan of school funds, he acts neither for himself nor the borrower, but for the public, being designated by the law to invest the school fund for the advancement of education; and he is charged with certain duties and clothed with certain rights by statute, and he possesses none other; and all persons who deal with him are bound to take notice of his official and fiduciary character, and to know that he can not bind the corporation for which he acts, except with the strict letter of the law.

MORTGAGE.—*School Fund Mortgage.—Legality of.—Married Woman.— Estoppel.—Security for Another.*—Where a married woman, to obtain a loan of the school fund, complies with all the statutory requirements in relation thereto and executes a mortgage upon her separate real estate, she is estopped from questioning the validity of the mortgage, and the fact that the auditor may have had knowledge that she was obtaining the loan as a security for another, can not affect the validity of the mortgage, when he has acted within the letter of the statute, and the mortgage has been voluntarily executed.

Separate opinion by DAVIS, J.; dissenting opinion by GAVIN, C. J.

From the Morgan Circuit Court.

*A. M. Cunning,* for appellants.

*J. H. Jordan, E. P. A. Phelps, O. Matthews* and *A. G. Smith,* Attorney-General, for appellee.

LOTZ, J.—The State of Indiana, on the relation of the Board of Commissioners of Morgan County, brought this action against the appellants to recover damages for the alleged breach of the official bond of one George W. Prosser, as auditor of said Morgan county.

The appellants, Davee and Norman, were sureties on said bond.   A demurrer was overruled to the complaint. The appellants then answered jointly in two paragraphs. The first is an answer in estoppel, and the second a general denial.

Appellee replied to the first paragraph, and the cause was submitted to the court for trial, which resulted in a finding and judgment for the appellee.

Davee *et al. v.* The State, *ex rel.* The Board of Comm'rs of Morgan Co.

Several errors are assigned, but as the controlling question in the case is presented in the one overruling the motion for a new trial, we will consider it alone. The causes for a new trial are that the finding and judgment were not sustained by sufficient evidence, and are contrary to the law.

Appellee, however, insists that the bill of exceptions containing the evidence is not properly in the record. This presents the first question for consideration. From the record, it appears that the clerk of the lower court made two certificates, both dated February 16, 1891. The first one immediately precedes the bill of exceptions, in which he certifies ''that the above and foregoing is a true and correct copy of the record and judgment of the court in the above entitled-cause as the same appears of record in my office.''

The record preceding this certificate shows that the motion for a new trial was overruled on the 27th day of December, 1890, and that sixty days from that date were given the appellants in which to file their bill of exceptions. Immediately following the first certificate is what purports to be a bill of exceptions containing the evidence. At the end of the evidence is this statement: ''And this was all the evidence in the case.'' The bill concludes in these words: ''And now, on the 13th day of February, 1891, and within the time allowed by the court, the said defendants come and tender this, their bill of exceptions, and pray that it may be signed, sealed and made a part of the record in this case, which is done accordingly. 　　　GEO. W. GRUBBS, Judge.''

The second certificate of the clerk, following this, is in these words:

''I, R. C. Griffitts, clerk of the Morgan Circuit Court, do hereby certify that the foregoing bill·of exceptions, purporting to contain all the evidence on the trial of the

above entitled cause, is the original bill of exceptions as filed by Nathan A. Whitaker, shorthand reporter in said cause.    In witness whereof I hereunto set my hand and affixed the seal of the Morgan Circuit Court.''    *    *    * Indorsed upon the bill is the following:    ''Filed Feb. 13, 1891.    R. C. Griffitts, clerk Morgan Co.''

The statute, section 629, R. S. 1881, requires that the bill shall be filed.    ''Until filed it is no part of the record, and unless the filing is affirmatively shown by the proper record, there is no evidence of the fact upon which the appellate tribunal can act.''    *Hormann* v. *Hartmetz,* 128 Ind. 353 (358).

It is said, in some cases, that a record entry must be made showing the filing and date thereof; and that such filing must also be shown by an independent entry, and can not be shown by a recital in the bill itself.    *Guirl* v. *Gillett,* 124 Ind. 501;    Elliott's App. Proc., section 805.

If, by the term ''record entry,'' as used in such authorities, it is meant an entry on the order book of the court below, then there is an apparent conflict between such cases and other decisions of the Supreme Court, for, in *Armstrong* v. *Harshman,* 93 Ind. 216, it appears that sixty days were given in which to file the bill of exceptions, and a transcript was made out and duly certified within that period which contained a bill, but there was no statement that this bill was ever filed in the clerk's office in the cause; yet it was held that the bill must be regarded as properly filed, and within the time given.    So, also, in *Hull* v. *Louth, Guar.,* 109 Ind. 315 (335), the clerk's certificate to the transcript stated that ''the foregoing is a full and complete transcript of the proceedings had, papers filed, and judgment rendered in the above entitled cause,'' and it further appeared that the bill was filed within the time fixed by the court.    It was held that it was thus made to appear that the bill was

filed.   See, also, *Hessian* v. *State*, 116 Ind. 58; *Oliver* v. *Pate*, 43 Ind. 132.

It is clear, from these last cited cases, that no entry upon the order book of the filing is contemplated.   There are two kinds of filing as usually practiced in legal proceedings.

Where the proceedings are required to be taken or made during the progress of a cause in term time, the papers or instruments upon which such proceedings are based must be presented to the court, and its attention called thereto.   Leaving the paper or instrument with the clerk, and causing it to be placed among the files of his office, is not sufficient to constitute a filing of the paper or instrument in such matters.   *Gilbert* v. *Hall*, 115 Ind. 549.

In one sense, filing means to exhibit or present any instrument or paper in a legal proceeding to the court in a regular way.   In another sense, it means to leave a paper with an officer for action or preservation.   In the latter sense, a paper is filed when delivered to the proper officer and by him received to be kept on file.   *Peterson* v. *Taylor*, 15 Ga. 483; *Powers* v. *State*, 87 Ind. 144.

The method adopted by our statutes, with reference to the presentation and filing of bills of exception, clearly contemplates that the bill must, oftentimes, be filed when the court is not in session, and this is done by delivering it to the clerk for action and preservation.

It is true that a bill of exceptions can only be filed in vacation upon the authority of the court given for that purpose when in session, and such authority must appear by the record, and not by the bill; and that without such authority the bill is no part of the record.   *Engleman* v. *Arnold*, 118 Ind. 81.

The record in this case, however, affirmatively shows that the court, while in session, gave time to file the

bill, and that the bill was filed within the time given. The record shows that the bill was properly filed.

There is no merit in appellee's other contention, that it does not appear that the bill contains all the evidence given in the cause.

The terms "all the evidence given in the cause" and "all the evidence in the cause," import the same thing. *Gish* v. *Gish*, 34 N. E. Rep. 305; *Beatty* v. *O'Connor*, 106 Ind. 81.

The undisputed facts in the case are substantially as follows: In the year 1886 George W. Prosser was the acting auditor of Morgan county, and had given his bond, with Davee and Norman as his sureties, conditioned for the faithful performance of his official duties. Frank C. Lloyd and Margaret Lloyd were husband and wife, residing in said county. The said Prosser, with others, was the surety of said Frank on a promissory note in the sum of eight hundred dollars, payable to one Charles Seaton. Frank was insolvent. The sureties on said note were anxious and solicitous that the note should be paid, or that they be in some manner relieved from liability. Margaret Lloyd, the wife, was the owner, in her own right, of a house and lot in the city of Martinsville, in said county. Prosser offered to make a loan from the school fund entrusted to said county on said lot, provided a part of the money was applied to the discharge of the note on which he was surety. Mrs. Lloyd had joined with her husband in mortgaging the same property on several other occasions to procure money to pay her husband's debts, but she refused to do so on this occasion until her husband said to her that he would lose his shop if she did not do so. She stated in her testimony that "I said then I would help him out this time, but I would not help him any more." All the statutory requirements to procure the loan were complied

with. She executed her note for the sum of three hundred dollars, and she and her husband duly executed a mortgage on her real estate to secure the loan. . She made the statutory oath that she was the legal owner of the property mortgaged, and that there was "no incumbrance or better claim either in law or equity that she knows of or believes, on or to said land." The auditor accepted the note and mortgage, and issued a warrant payable to the said Margaret, for the sum of three hundred dollars. This warrant was delivered to her husband, who caused it to be presented to the treasurer and the money obtained thereon. Two hundred and sixty-five dollars were applied as a payment on the Seaton note, and the remainder used by the husband for his own purposes. No part of the money was received by the wife, or used for her benefit. Morgan county afterwards, and before the commencement of this action, reimbursed the school funds.

By the constitution and statutes of this State, the school funds, congressional and common, are set apart and devoted to the high purpose of the education of the people. Const., section 2, article 8; section 4325, R. S. 1881.

So careful is the fundamental law for the preservation of these funds that section 3, article 8, provides that "The principal of the common school fund shall remain a perpetual fund, but which may be increased, but shall never be diminished; and the income thereof shall be inviolably appropriated to the support of the common schools, and to no other purpose whatever." See, also, section 4325, *supra*.

The counties to which said funds are entrusted are held liable for both principal and interest thereon. Section 6, article 8, Const.; section 4326, R. S. 1881.

It is made a part of the official duties of the auditor to

manage and control the school funds entrusted to the county which he serves. The statutes, in carrying out the design of the constitution that such funds shall never be diminished, have thrown every safeguard around them, The funds can only be loaned upon mortgage security, and it is made the duty of the auditor to inform himself of the value of the real estate offered, and be satisfied of the validity of the title thereof; and all persons applying for a loan shall produce to the auditor title papers showing, to his satisfaction, a good and sufficient title in fee simple, without incumbrance. He shall also require the real estate to be appraised by three disinterested freeholders of the neighborhood. Such appraisers, after being officially sworn, shall examine and appraise the land and sign and give to the applicant a certificate setting forth the fair cash value, without taking into consideration perishable improvements, and no loan shall exceed one-half of the appraised value. The applicant for the loan shall file with the auditor the certificate of the clerk and recorder of the county that there is no incumbrance on the land offered as security in either of said offices. And, last of all, "Such applicant shall make oath that there is no incumbrance or better claim that he knows of, and that the abstract of title presented by him is, as he believes, a true one." See sections 4370, 4371, 4372, 4373, 4375 and 4376, R. S. 1881.

The statute also prescribes the form of the note and mortgage, and after these things shall all have been done, the auditor shall draw his warrant in favor of the *borrower*. Section 4387.

It is true, as a general proposition, that a married woman can not mortgage or pledge her own separate property to secure the debt of her husband or any other person, but it is equally well settled that she ·may, by her husband joining with her, mortgage or pledge it for her

own debt, or to discharge valid claims against it, and such contracts are binding upon her. The authorities go even farther than this, and lay down the rule, that although the mortgage or incumbrance be to secure the debt of another, she may estop herself by matter *in pais* against questioning its validity. *Taylor* v. *Hearn*, 131 Ind. 537; *Cummings* v. *Martin*, 128 Ind. 20; *Bouvey, Guar.,* v. *McNeal*, 126 Ind. 541; *Ward* v. *Berkshire Life Ins. Co.*, 108 Ind. 301.

Shall all the solemn acts of the married woman as shown by the above statement be overthrown by the fact that the auditor knew that the money was obtained for the purpose of paying the debts of her husband?

As was well said in *Deming* v. *State, ex rel.*, 23 Ind. 416: "These provisions, defining the duty of the auditor, were obviously intended as safeguards for the preservation of the fund. Their whole tenor indicates a careful purpose of the Legislature to make every loan secure beyond any contingency. This, too, was unquestionably the only object sought to be attained."

In the case of the *State, ex rel.,* v. *Kennett*, 114 Ind. 160, it was held that a married woman who had joined with her husband in executing a mortgage on lands owned by them as tenants by entireties, to secure money from the school funds, which money was received and used by the husband, was void as to her. But it does not appear from the statement of the case as reported that she made the statutory oath, furnished the abstract of title, or that the warrant was issued in her name. As the title was in them jointly, her husband may have done all this alone. In fact she does not seem to have done anything, except that she joined her husband in making the mortgage.

In the more recent case of *Snodgrass* v. *Morris, Auditor*, 123 Ind. 425, it was intimated, although not decided, that a married woman who makes the statements the statute re-

quires to obtain a loan from the school funds can not defeat it.    And the court used these forcible words: "There are strong reasons why the rule which applies in ordinary cases should not apply to such a case."

In making a loan of the school funds, the auditor does not act for himself or for the borrower; he acts for the public.    He is the officer designated by law to invest the school funds in order that the cause of education may be advanced.    He is clothed with certain rights and charged with certain duties conferred by statute, and he possesses none other.    All persons who deal with him are bound to take notice of his official and fiduciary character, and to know that he can not bind the public corporation or government for which he acts, except within the strict letter of the law.    When he has performed a public duty within the law, it is difficult to see how his knowledge of any extraneous matter can affect the validity of the transaction.    When the auditor has satisfied himself of the sufficiency of the title and the value of the lands; has caused the same to be appraised; has received the certificate of the clerk and the recorder; and has caused the applicant, who has capacity to contract, to make the statutory oath, and has drawn his warrant in favor of the *borrower*, shall it be said that because he knew the lands mortgaged belonged to a married woman, and the moneys realized were to be used to pay the debts of her husband, the security must fail?    Such a rule would be dangerous, indeed, for the auditor is only required to give a bond in the sum of two thousand dollars, a sum wholly insufficient to protect the county against such liabilities. No one can mortgage his property to secure a loan from the school fund without his active participation in the transaction at some stage.

If the knowledge of extraneous matters on the part of a public officer affects the validity of a voluntary con-

Davee *et al. v.* The State, *ex rel.* The Board of Comm'rs of Morgan Co.

tract at the option of the other contracting party, then there is but little security for public property. The borrower and auditor do not stand in the relative position of mortgagor and mortgagee. The relation of debtor and creditor never can exist between them. The borrower is the debtor and the State is the creditor. The State acts through its agent, the auditor, but he is a special agent of limited and peculiar powers. His powers are conferred by the law, and all persons are bound to know the law and to know what his powers and duties are. When any person has voluntarily contracted with such an agent, and in conformity with the method prescribed by law, we can conceive of no greater wrong or fraud upon the public than to permit him to defeat the mortgage by saying that the State's agent knew, or could have known, by exercising diligence, that the money obtained was used to pay the debt of another. The highest consideration of public policy requires when the auditor has acted within the letter of the statute, that a mortgage which has been voluntarily executed shall not be defeated by his knowledge of such extraneous facts, as are shown by the evidence in this case.

In the recent case of *Lloyd* v. *State, ex rel.*, 134 Ind. 506, the validity of this same mortgage was upheld.

We think that Margaret Lloyd has estopped herself against questioning the validity of the mortgage.

The judgment is reversed, with instructions to sustain the motion for a new trial.

Filed May 27, 1893.

## Separate Opinion.

Davis, J.—I do not concur in all the reasoning, but in view of the fact that the Supreme Court has affirmed the judgment foreclosing the identical mortgage in ques-

Vol. 7—6

tion against said Margaret Lloyd, I concur in the result reached in the principal opinion.

Filed May 27, 1893.

### DISSENTING OPINION.

GAVIN, C. J.—I am unable to concur in the opinion of the majority of the court.

In addition to the facts set out in the principal opinion, it appears that the auditor, with others, was surety for Frank Lloyd to Charles Seaton, the county treasurer who paid the warrant drawn for the loan in question who testifies that these orders ran, generally, "pay to John Jones, or bearer," and also: Q. "Was this order payable to her?" A. "I do not remember. I am not positive, but think it was payable to her, but I paid it to Frank" (the husband).

The warrant itself had been destroyed. Margaret Lloyd testified:

2. You may state what, if anything, you had to do with borrowing that money from the school fund? A. I did not have anything to do with it, only to sign the mortgage.

3. Who borrowed the money? A. Frank borrowed it.

Q. Did he (the auditor) call upon you in regard to that money? A. No, sir.

Q. Who took the acknowledgment of the mortgage? A. Mr. Charles Lockhart.

Q. Did he ask you anything about it? A. He did not; just came in and asked if I understood it.

Q. Did you ever see the warrant for the money? A. No, sir.

Frank Lloyd testified:

"I went to Mr. Prosser and told him that there was some dissatisfaction about that note, and I told him that I would like to borrow $300, and that I would give him

a mortgage on my wife's property. He said Mr. Halton was making the biggest kick. He said, if you can get your property appraised at $600 I will loan you $300. By paying $300 on the note he thought the securities would not say anything more about it until next year. It was understood that I was borrowing the money to pay on the Seaton note."

Q. You took the warrant to Seaton and got credit on the note for it? A. Yes.

Q. Was the warrant drawn in your wife's name? A. I think the warrant was drawn in my name.

Q. Did your wife have anything to do with making this loan? A. No, sir.

Q. Was it for her benefit? A. No, sir.

Under these facts and this evidence, I think the court was abundantly justified in finding that Margaret Lloyd was simply the surety for her husband, as the auditor at the time knew. If she was simply surety, the mortgage was void, unless some element of estoppel prevents her from asserting the defense. There is not here a single element of estoppel. There is no misrepresentation upon her part either express or tacit, if such there might be. There is absolute knowledge of the facts upon the part of the representative of the State. The statute, in imposing this disability upon a married woman, makes no exception in favor of school fund mortgages. The same law applies both to the citizen and the sovereign. While the integrity of the school fund should be carefully preserved let it be done by holding to a strict accountability an officer who makes a loan which he knows to be invalid, simply for the purpose of relieving himself from an individual responsibility.

Filed May 27, 1893.