## KELSO *v.* KELSO ET AL.

[No. 1,888.    Filed Oct. 16, 1896.    Rehearing denied Jan. 27, 1897.]

MORTGAGE.—*Deed Absolute in Form.*—A conveyance by deed absolute in form, given to indemnify the grantee against any loss as surety, is nothing more than a mortgage.

SAME—*Deed.*—*Evidence.*—A deed absolute on its face may be shown by parol to have been intended as a mortgage.

PRINCIPAL AND SURETY.— *Deed.— Mortgage.— Implied Trust.*—The acceptance by a surety of a deed absolute on its face, but intended as a mortgage to indemnify him against loss by reason of his suretyship, raises an implied trust in favor of his co-sureties, and he holds the property not only as indemnity for himself, but also for his co-sureties.

APPEAL AND ERROR.—*Bill of Exceptions.— Longhand Manuscript of Evidence.*—The record must affirmatively show that the bill of exceptions was properly filed with the clerk after it had been signed by the court, and that the longhand manuscript of the evidence was filed with clerk before it was incorporated in the bill of exceptions.

From the Knox Circuit Court. *Affirmed.*

*George G. Reily* and *James W. Emison*, for appellant.

*William A. Cullop* and *Clarence B. Kessinger*, for appellees.

Ross, J.—This cause was transferred to this court by the Supreme Court, as belonging within this court's jurisdiction.

The appellee, Joseph B. Kelso, filed his complaint against his co-appellee, Kate Brouillette and the appellant James I. Kelso, as follows:

"The plaintiff complains of the defendants, and says, that heretofore, on the 19th day of November, 1882, one Jerome T. Kelso was largely involved financially, and had been for a long time prior thereto, and that on said day and for a long time prior thereto, plaintiffs were and had been securities for said Jerome T. Kelso, for the purpose of saving him from financial disaster, and that on said day above mentioned, plaintiff and defendants were securities for said Jerome T. Kelso, in the sum of six thousand four hundred dollars ($6,400.00), evidenced as follows, to-wit: One promissory note payable to the First National Bank of Vincennes, Indiana, in the sum of one thousand four hundred and fifty dollars ($1,450.00), one promissory note payable to the First National Bank of Vincennes, Indiana, in the sum of two thousand dollars ($2,000.00), and also one promissory note payable to the Vincennes National Bank, of Vincennes, Indiana, in the sum of four thousand dollars ($4,000.00). That prior to said date said parties had been and were securities for said Jerome T. Kelso, for said sums and divers other sums herein mentioned. That at said time and for a long time prior thereto the said Kate Brouillette was the mother-in-law of said Jerome T. Kelso, and that said James I. Kelso and Joseph B. Kelso were her brothers; at said time Kate Brouillette was the owner of a large amount of valuable real estate situated in Knox county, Indiana. That said James I. Kelso for a long time prior to said date, aforesaid, had become alarmed at the financial condi-

tion of Jerome T. Kelso, and had, during their said suretyship aforesaid, refused to stand longer as surety for said Jerome T. Kelso, unless he was in some way indemnified or secured against loss thereby, and the said Kate Brouillette, Julia E. Kelso, the wife of the said Jerome T. Kelso, joined by said Jerome, as Julia's husband, executed to him, said James I. Kelso, a mortgage on certain real estate in Knox county, Indiana, on the —— day of January, 1882, on what was known as the river farm, said Julia E. Kelso being the owner of an undivided one-third of said river farm. That said Kate and said Julia owned as tenants in common, two-thirds of said river farm. Said mortgage was executed as an indemnity to secure said James I. Kelso against any losses he might sustain on account of his said suretyship from said Jerome T. Kelso. That said Julia E. Kelso was then the wife of Jerome T. Kelso, and so continued to be until the present time, and has ever since been. That said mortgage on said real estate was executed to indemnify and secure said James I. Kelso as a surety of said Jerome T. Kelso, and for no other purpose whatever.

"That while acting as such surety for said Jerome T. Kelso, as aforesaid, on said debts, aforesaid, at said time aforesaid, the plaintiffs and defendants entered into the following agreement, to-wit: 'This agreement made and entered into this 25th day of November, 1882, between James I. Kelso, of Knox county, Indiana, the party of the first part, and Kate Brouillette, of Vincennes, Indiana, and Joseph B. Kelso, of Knox county, witnesses, of the second part, whereas the parties of the first and second parts are jointly and severally liable, and subject to the conditions hereinafter stated, as securities for one Jerome T. Kelso, as follows, viz.: On one promissory note to the

First National Bank of Vincennes, Indiana, for the sum of $1,450.00; one promissory note to the First National Bank of Vincennes, Indiana, for two thousand dollars ($2,000.00); one promissory note to the Vincennes National Bank, of Vincennes, Indiana, for four thousand dollars ($4,000.00). Whereas the said party of the second part has a mortgage made and executed to them by the said Kate Brouillette on her farm, known as her river farm, to secure him against any loss, as to the note of $1,450.00; and whereas, the party of the first part being a co-surety with the parties of the second part on the two notes of two thousand and four thousand dollars each at the request of the parties of the second part, and upon their promise and agreement that the party of the first part should ever be, by them, saved harmless from any payment thereof; and that he consented to become such co-surety simply to aid the parties of the second part from having to pay the said notes at once, and thereby get them further time in which to pay the said notes, or to succeed in getting the principal, Jerome T. Kelso, to pay him, and whereas the said principal, the said Jerome T. Kelso, has failed in part and in whole to pay these said notes, all of which are now past due; now, therefore, be it here understood that the party of the first part is willing and hereby agrees and covenants to pay off and satisfy in full the said note of $1,450.00, and also agrees and covenants to release his said mortgage at a certain time hereinafterward named. And be it further understood that the parties of the second part hereby covenant and agree to pay off and satisfy in full the two said notes of $2,000.00 and $4,000.00 each, provided that at the time they are prepared to pay off the sum the party of the first part will release his said mortgage hereinbefore mentioned.

' "Any and all property which all or either of the parties may be able to secure from the said Jerome T. Kelso is to be divided pro rata among the parties hereto. This is an agreement for a final settlement of matters herein mentioned between the parties hereto, James I. Kelso, Joseph B. Kelso and Kate Brouillette.' Plaintiff avers that said parties thereto did pay, and become liable to pay, said notes as therein stipulated; that each and all paid the sum as therein agreed upon. Plaintiff also avers that James I. Kelso paid, of said liabilities aforesaid, the sum of $1,450.00, and that he, plaintiff, and said Kate Brouillette paid the sum of $6,000.00, to-wit, the sum of $3,000.00 each, and that he has refused to repay plaintiff any part thereof, or any part of the excess over and above said liabilities before said * * * be received therefor. Plaintiff says that he kept his part of said agreement as therein stipulated, and that the defendant, Kate Brouillette, also kept her part of said agreement as therein stipulated, but that the defendant, James I. Kelso, failed and refused to keep his part of the agreement as therein stipulated, in this, to-wit, that each and every one of the parties to said agreement has paid and satisfied the notes that each and every one thereto assumed and agreed to pay, and that the same has been fully satisfied and paid so far as the parties to said agreement are concerned. That the defendant, James I. Kelso, failed to keep his part of said contract in this, to-wit, that during the pendency of their said suretyship for said Jerome T. Kelso, his wife, Julia E. Kelso, was the owner as a tenant in common with Kate Brouillette and Elizabeth Brouillette, of a hundred and twenty-nine acres of real estate situated in Knox county, Indiana, of the value of ten thousand dollars ($10,000.00). She was the owner in fee simple of an undivided one-third thereof. And

that during the pendency of their said suretyship aforesaid, said defendant, James I. Kelso aforesaid, procured Jerome T. Kelso, the husband of said Julia E. Kelso, for the sole and exclusive purpose of securing the above sum of money for which the plaintiff and defendants were surety for him, as an indemnity against loss on account of such suretyship, to induce his said wife, the said Julia E. Kelso, to convey to him the said real estate, which she then owned, to secure him and said plaintiff and said defendant, Kate Broulliette, as such surety for said Jerome T. Kelso, and that for said purpose, and only for the purpose of securing said parties against loss on account of their said suretyship for said Jerome T. Kelso, and his said wife, Julia E. Kelso, executed to said James I. Kelso, a deed of conveyance for her said real estate situated in Prairie Surveys numbers 14, 15, 16, 17, 18, and 19, in township three (3), of range ten (10) west, in Knox county, Indiana; that by said deed an undivided interest was conveyed in said real estate, and afterwards, to-wit, the said defendant, James I. Kelso, brought suit in the Knox Circuit Court against the aforesaid, Kate Brouillette and Elizabeth Brouillette, as owners as tenants in common with him in said real estate aforesaid, and as the interest which he acquired under said deed, by the judgment of the Knox Circuit Court, there was set off to him the following as the interest conveyed him by said deed, to-wit: Part of Upper Prairie Surveys 17, 18, 19 in Township number three (3) north, of range ten (10) west; bounded as follows:   Beginning where the line between Upper Prairie Surveys 16 and 17 intersects the southeast line of right of way of the Indianapolis and Vincennes Railroad; thence south 32 degrees and 8 minutes east, 17 30-100 chains; between said surveys 16 and 17 to a stone from which an ash 15 inches in

diameter bears north 35 3-4 degrees east, a hundred and eighty-one (181) links; thence north 75 3-4 degrees east, 6 53-100 chains to the northwest line of the right of way of the Ohio and Mississippi railway; thence curving to the right in a northeasterly direction with a radius one thousand seven hundred and thirty feet, 14 chains; thence north 75 3-4 degrees east, with a northwest line of right of way of said Ohio and Mississippi railway 2 10-100 chains to Upper Prairie Surveys number 10; thence north 82 1-4 degrees west, with said survey 24 33-100 chains to the southeast line of right of way of the Indianapolis railway; thence south 53 1-4 degrees west, to said right of way to the beginning containing 43 75-100 acres. That said James I. Kelso acquired title to said real estate for the sole purpose of indemnifying him, said Kate Brouillette, and the plaintiff herein on account of the aforesaid suretyship. That said Jerome T. Kelso procured and had said conveyance made to said James I. Kelso for said purpose and no other purpose whatever. That the sole and only object of said Jerome T. Kelso in having and securing said conveyance to be made to said James I. Kelso, was for the purpose of securing him and this plaintiff against loss on account of their said suretyship for said Jerome T. Kelso. That no other consideration was passed for the title of said real estate, and the only consideration that was passed for the same was their suretyship for said Jerome T. Kelso; that said Julia E. Kelso received no consideration therefor, and that it was a voluntary conveyance on her part for the purpose of securing her said husband, Jerome T. Kelso's indebtedness, and for no other purpose whatever. The said James I. Kelso has had the use of said real estate for eight years last past, which had been worth to him the sum of five hundred dollars

($500.00) per annum. That on the —— day of January, 1891, he sold and conveyed said real estate to the Vincennes Coal Company for and in the consideration of the sum of eight thousand dollars ($8,000.00), and when he so received the sum, he appropriated the whole of the sum to his own use, and has failed and refused to account to this plaintiff for any part thereof; that he had appropriated the whole of the rents and profits which he received from said real estate during all of said time aforesaid, to his own use; that he did not divide the consideration received as aforesaid, for real estate, or the rents therefrom pro rate among the parties hereto by the terms and conditions of said contract stipulated, but he kept the whole of the same, and has failed and refused to pro rate the sum among all the parties to said contract according to the amount of the loss sustained by each on account of their said liability for and on account of their said suretyship for said Jerome T. Kelso, as per the terms and conditions of said contract aforesaid. Plaintiff avers that said Jerome T. Kelso has made no other payments on account of their loss as said suretyship, other than said real estate so conveyed to said James I. Kelso, as hereinbefore mentioned. Plaintiff avers that said Jerome T. Kelso procured and had said property aforesaid conveyed to said James I. Kelso for the benefit of all of said parties named in said contract as aforesaid stated. That it was made for the purpose of securing all of said parties according to their respective liabilities on account of being surety for him. Plaintiff further says that defendant, James I. Kelso, has failed and refused to keep his part of said contract as therein stipulated, and has broken the same as hereinbefore stated. That on account of his said failure to keep said contract, as herein stated, a cause of action on said contract has come

to the plaintiff in this, to-wit:   To have said defend-
ant, James I. Kelso, account to him for the consider-
ation received in payment of said real estate so con-
veyed by him, and the rents and profits arising there-
from, which he has collected and received and used
and appropriated for his own use, and to have him
prorate the same according to the terms of said
agreement to him and the said Kate Brouillette ac-
cording to their respective losses and liabilities for be-
ing surety for the collection for said Jerome T. Kelso.
And that on account of said James I. Kelso's failure
and refusal to so account and pay over pro rata to
him his share thereof, he has been damaged in the sum
of $10.000,00.

"Said Kate Brouillette is made a party hereto to
answer whatever interest she may have had in said
contract and said sums so derived from the sale of
said real estate and rents and profits arising there-
from as mentioned and stipulated in the aforesaid
contract.   Wherefore plaintiff prays judgment against
the defendant for an accounting of the rents and prof-
its which were received on account of the sale thereof,
and for judgment in the sum of ten thousand dollars
($10,000.00), and for all other relief in the premises."

The appellee, Kate Brouillette, did not answer the
complaint, neither was she defaulted, nor was any
judgment rendered for or against her in the court be-
low.

The sufficiency of the facts alleged in the complaint
to state a cause of action are vigorously assailed, the
appellant insisting that the theory upon which the
complaint proceeds is to establish and enforce a pa-
rol trust.

The material allegations of the complaint are that,
on the 19th day of November, 1882, and for a long
time prior thereto, the appellees were sureties for one

Jerome T. Kelso in the sum of sixty-four hundred dollars, as evidenced by a number of promissory notes, which were particularly described; that said Jerome T. Kelso was in failing circumstances; that Julia E. Kelso, the wife of Jerome T., was the owner of the undivided one-third of certain real estate in Knox County, Indiana, the remaining two-thirds belonging to her mother and sister, the appellee, Kate Brouillette, who is the sister of Joseph B. and James I. Kelso; that Julia E. Kelso, in order to secure and protect the appellant and the appellees as sureties, for her husband, conveyed her interest in said real estate to the appellant by a deed absolute in form; that while so acting as such surety, the appellant and the appellees entered into the agreement mentioned in the complaint, by which agreement it was agreed that "all property which all or either of the parties may be able to secure from the said Jerome T. Kelso is to be divided pro rata among the parties hereto;" that the appellant sold the property so conveyed to him as aforesaid, realizing therefrom $8,000.00; that said Joseph B. Kelso and Kate Brouillette performed their part of said agreement and paid the obligations on which they were surety, but that the appellant, James I. Kelso, has failed and refused to comply with his part, in that he has refused to account to his co-parties for the proceeds of said sale.

Our statute, section 3391, Burns' R. S. 1894 (2969, R. S. 1881), provides that, "no trust concerning lands, except such as may arise by implication of law, shall be created, unless in writing, signed by the party creating the same."

If this is an action to establish and enforce an express trust, as appellant contends, created by parol, it must fail. *Matlock's, Admr.,* v. *Nave,* 28 Ind. 35;

*Wright, Gdn.,* v. *Moody,* 116 Ind. 175; *Peterson* v. *Boswell,* 137 Ind. 211.

If, as alleged in the complaint, the property was conveyed to the appellant by a deed absolute on its face, but in truth and in fact it was to be held as an indemnity, to protect the appellant from loss as such surety, the deed of conveyance was nothing more than a mortgage. It is well settled that a deed absolute on its face may be shown by parol to be simply intended as a mortgage. *Loeb* v. *McAlister,* 15 Ind. App. 643.

The demurrer admits that the property was conveyed to the appellant to indemnify him against loss in the event that he was compelled to pay any part of the obligations upon which he and the appellee were sureties. When the appellant accepted a conveyance of the property to indemnify him against loss, a trust by implication of law arose in favor of the appellees, and he held the property not only as an indemnity for himself, but also as an indemnity for his co-sureties. Where one of several sureties, who are jointly liable, is indemnified, the indemnity inures to the benefit of all, and the one holding the security by implication of law becomes a trustee for his co-sureties. *Sanders* v. *Weelburg, Exx.* 107 Ind. 266; *Moorman* v. *Hudson,* 125 Ind. 504.

We think it apparent from the facts alleged that the appellant received property to indemnify him against loss, in the payment of obligations upon which the appellees were equally liable as his co-sureties; that he converted the property into money; and, although the appellees were compelled to pay these obligations upon which they and the appellant were jointly liable, he did not account to them for their share of such indemnity.

The complaint states a cause of action, and the

court below did not err in overruling the demurrer thereto.

The other questions urged for our consideration arise on the ruling on the motion for a new trial. The appellees contend that none of the questions relating to the ruling are properly before the court for the reason that the evidence is not properly in the record.

We have before us, as the record in this case, a "complete transcript of the record and proceedings" of the court below, properly certified to as such by the clerk of the Knox Circuit Court. In this transcript are copies of the complaint and the demurrer thereto; the answers and the demurrers thereto; the replies; the verdict of the jury, with interrogatories and answers thereto; the motion for a new trial; the appeal bond, and a bill of exceptions containing the instructions, those asked and refused as well as those given; also copies of the order-book entries in said cause. This transcript, as already stated, is properly certified to by the clerk. Following this certificate of the clerk to such transcript is another certificate of the clerk wherein he certifies "that the annexed and subjoined longhand manuscript of the evidence in said cause taken by Helen Hinkle, the shorthand reporter in said cause, was filed in my office, December 21, 1893, and that the signature of E. A. Ely, the special judge thereto, is the genuine signature of said judge." Following this certificate is what purports to be a bill of exceptions containing the evidence as taken down in shorthand by Helen Hinkle, shorthand reporter, and by her transcribed into longhand.

The proper place for a bill of exceptions in a transcript, in order that it may be considered in the record, is some place before the certificate of the clerk, which should be at the end and not at the beginning of the transcript.

The longhand manuscript of the evidence which is incorporated in what purports to be a bill of exceptions, as shown by the transcript before us, was, as the clerk certifies, filed in his office on the 21st day of December, 1893; but there is nothing, either by way of recital in the transcript, the certificate of the clerk, or any file mark, to show that after the longhand manuscript was incorporated in the bill of exceptions and signed by the court, the bill of exceptions was filed with the clerk of said court.

It is absolutely necessary that the record show affirmatively that the bill of exceptions was properly filed with the clerk after it had been signed by the court. To file the longhand manuscript of the evidence is not sufficient. The longhand manuscript of itself does not constitute a bill of exceptions; but after such manuscript is embodied into a formal bill, presented to and signed by the court, it becomes a bill of exceptions, and, when filed, becomes a part of the record. *Evansville Street R. W. Co.* v. *Meadows,* 13 Ind. App. 155; *DeHart* v. *Board, etc.,* 143 Ind. 363; *Ueker, Admx.,* v. *Bedford Blue Stone Co.,* 142 Ind. 678; *Peerless Stone Co.* v. *Wray,* 143 Ind. 574; *Salem Bedford Stone Co.* v. *Hobbs,* 144 Ind. 146; *Miller, Admx.,* v. *Evansville, etc., R. R. Co.,* 143 Ind. 570.

Again it is insisted that the evidence is not in the record because it was not filed, either in the form of the longhand manuscript or as a bill of exceptions, within the time designated by the court.

It appears from the record that the appellant was granted ninety days from June 26, 1893, to file his bill of exceptions. The clerk certifies that the longhand manuscript was filed in his office on the 21st day of December, 1893.

This objection seems to be well taken. *Mason* v. *Brody,* 135 Ind. 582; *Holt* v. *Rockhill,* 143 Ind. 530;

*DeHart* v. *Board, etc., supra; Smith* v. *State,* 145 Ind. 176.

If the bill of exceptions was in fact filed after it was signed by the court, and the clerk failed to make the transcript so state, the appellant has had ample time, since appellees' counsel raised the objection to considering it as in the record, to have had the transcript corrected.

The judgment of the court below is affirmed.

On PETITION FOR REHEARING.

WILEY, J.—Appellant has filed a petition for rehearing in which he earnestly contends that the court in its original opinion, "overlooked the plain and unmistakable record," in holding that the bill of exceptions was not properly in the record, and could not be considered. In view of the earnest appeal of the appellant in his brief in support of his petition for a rehearing, we have examined the record with much care. The record shows that appellant's motion for a new trial was overruled June 26th, 1893, *"to which decision of the court the defendant at the time excepts, and ninety days' time is given in which to prepare and file his bill of exceptions."* We have quoted the exact language of the record, from which it appears that the time for filing the bill of exceptions expired ninety days from June 26th, which would be September 23, 1893. Section 1476, Burns' R. S. 1894 (1410 Horner's R. S. 1896), provides: "Whenever, in any cause, such verbatim report shall have been made by an official reporter, the original longhand manuscript of the evidence, by him made, may be filed with the clerk of the court by the party entitled to the use of the same; and in case of an appeal to the Supreme Court, * * * * * it shall be the duty of the clerk, if requested to do so by said party, to certify the said original manuscript of

evidence, when the same shall have been incorporated in a bill of exceptions, to the Supreme Court or other court of appeal, instead of a transcript thereof; and the said original manuscript of evidence may be used in the Supreme Court or other court of appeals in the same manner and for all purposes in and for which a certified transcript thereof might heretofore be used." Under the provisions of the statute just quoted, and the repeated decisions of the Supreme and this court, it is the settled law in this State, that the original longhand manuscript of the evidence must be filed in the clerk's office before it is incorporated in a bill of exceptions, and the record must affirmatively show such filing. *DeHart* v. *Board, etc.,* 143 Ind. 363; *Joseph* v. *Wild,* 146 Ind. 249; *Carlson* v. *State,* 145 Ind. 650; *Rogers* v. *Eich,* 146 Ind. 235; *Smith* v. *State.* 145 Ind. 176; *Beaty* v. *Miller,* 146 Ind. 231; *Marvin* v. *Sager,* 145 Ind. 261; *Holt* v. *Rockhill,* 143 Ind. 530.

The only evidence in the record that the original longhand manuscript was ever filed in the clerk's office is the certificate of the clerk that *"the annexed and subjoined longhand report of the evidence in said cause* * * * * * *was filed in my office, December 21st, 1893."* It appears therefore on the face of the record that the "longhand report of the evidence" was not filed in the clerk's office until nearly three months after the time fixed by the court for filing a bill of exceptions, and as such filing of the evidence must precede the filing of the bill of exceptions, it follows that the evidence is not properly in the record.    Appellant contends under the provisions of section 641, Burns' R. S. 1894 (629, Horner's R. S. 1896), that delay of the judge in signing and filing the bill of exceptions, should not deprive the party objecting to the benefit thereof.    In this contention appellant is right, but in

this case appellant, by reason of the delay of the judge in signing the bill of exceptions, was not in any way harmed. The trouble here is, that the longhand manuscript of the evidence was not filed with the clerk before it was embraced in the bill of exceptions, and the further fact, that the bill, after having been signed by the judge, does not appear, from any file mark, any certificate of the clerk, or anything in the record, to have been filed in the clerk's office. The failure of the record to affirmatively show that the bill was filed in the clerk's office, after it had been signed by the judge, is fatal, and the bill is not properly in the record. *Evansville, etc., R. W. Co.* v. *Meadows*, 13 Ind. App. 155; *Davee* v. *State ex rel.*, 7 Ind. App. 71; *Gish* v. *Gish*, 7 Ind. App. 104; *Prather* v. *Prather*, 139 Ind. 570.

In the absence of an affirmative showing of these facts, we must hold, in harmony with the decisions quoted, that the evidence is not in the record.

Petition for hearing overruled.